Oliver and Company et al. v. Visionary Fund Manager and Oliver and Company et al. v. Visionary P.E.G.P. 1 Mr. Gaston Thank you, Your Honor, and may it please the Court, Chairman Gaston for Appellant's Visionary Fund Manager, who we call V.F.M., and Visionary P.E.G.P. 1 LLC, who we call V.P.E.G.G.P. because it's the general partner of V.P.E.G., which is the entity at the center of this dispute. It's important to realize V.P.E.G. is a Missouri limited partnership. It runs an investment fund with approximately 1,000 limited partners, has $90 million approximately in committed capital, and it invests in a portfolio of companies. V.P.E.G.P. is the sole general partner and manager of V.P.E.G. under a limited partnership agreement that gives all management authority, all contracting authority, all distribution of funds authority, all of that to V.P.E.G.P. The other appellant, V.F.M., acts as an advisor to V.P.E.G.G.P., recommending investments, doing due diligence. Even though it's called visionary fund manager, it doesn't manage the V.P.E.G. fund. It assists the true manager, V.P.E.G.G.P., in the management of the fund by helping with investment decisions. The plaintiffs here are 10 of the nearly 1,000 V.P.E.G. limited partners. According to their allegations, they invested approximately $11 million in V.P.E.G. and loaned additional funds later, $1.7 million, they say. They claim their investments and loans were diverted by the people who were managing the manager for personal purposes and that the portfolio itself, the investments were mismanaged. They sued V.P.E.G., V.P.E.G.G.P., V.F.M., and certain individual managers, Zambur, Cosby, and Grindley, for claims like breach of fiduciary duty, fraud, negligent misrepresentation, and they invoked federal diversity jurisdiction. They labeled V.P.E.G. as a nominal defendant. They very quickly dropped V.P.E.G.G.P. as a defendant at all and then they asked the district court for a receiver over both V.P.E.G. and V.F.M. The district court gave them a receiver. V.P.E.G.G.P. then sought to intervene because it had been dropped and that was denied. We get to this appeal where V.F.M. has appealed the receivership over it and V.P.E.G.G.P. has appealed the denial of intervention. This court consolidated the two appeals and there is a single determinative threshold question. Did the district court ever have diversity jurisdiction? Our position is that no and that there are two reasons why it did not. The first, and I think it's the easiest, although plaintiffs labeled V.P.E.G. as a nominal defendant, it is not. Since V.P.E.G. is not diverse from plaintiffs, there is no diversity. That follows from the Supreme Court decision in Carden which says that V.P.E.G. has the citizenship of every limited partner, which includes plaintiffs. Since plaintiffs can't be diverse from themselves, there is no diversity jurisdiction. Even more generally speaking, it's impossible for limited partners to sue their limited partnership in federal court under diversity jurisdiction with perhaps one exception. If the limited partnership truly qualifies as nominal. The reason V.P.E.G. does not, we have to explain what does nominal mean. We've cited a few cases that use different phrases. I think they get to the same point. One says a party is nominal only. It seems to me it's a linguistic issue. Direct claims. Who invented the notion of direct claims in this case? It doesn't come from common sense or case law, right? I think the plaintiff's second amended complaint put claims in two buckets. They would plead breach. The district court said they're direct claims and they're derivative claims. I like the direct claims. It's a false distinction, isn't it? It depends on the nature of the injury. If a plaintiff says somebody told me something fraudulently to induce me to give them some money and I want it back from that person and it's just between us, then that's a direct claim because the injury is suffered solely by the plaintiff. If the plaintiff... If the notion of a direct claim is distinct from just claim, is a creature of advocacy and VPEG cannot be a nominal defendant, then you win, right? Yes. Why can't VPEG... It seems to me VPEG... There's a good argument why it can't be a nominal defendant, but I'm not sure the lawyers really made that clear. If you agree with that, what makes it clear? What makes it clear is the basic definition of nominal, which a party is nominal under this circuit's precedent when, quote, no real relief is sought against it. However, plaintiff's second amended complaint, and that's the live pleading when both of the appeals were noticed, seeks seven categories of relief directly against VPEG. It wants to rescind the subscription agreements by which the plaintiffs made their investments in VPEG. They want to get a receiver over VPEG, which they got. They want to freeze VPEG's assets. They want to remove VPEG's management. They want specific performance of the limited partnership agreement, which would mean directing people to control the management of VPEG. And they want their $11 million from VPEG back, and they want their loan money back from VPEG. So whether you count that as seven or eight or six, when they also want an accounting of VPEG's finances. And that's the appendix page 319, group of paragraphs A through H. To me, it's as simple as that. And in fact, after the appeals were noticed, that ends the appeal, right? I think coming out on the other side, and I think there's a tension here in the complaint. So if you look at the Supreme Court's decision in Walschlager, which I don't expect you to know, but it says the plaintiff is the master of the complaint. If they eliminate all state law claims, then the case can stay in federal court or vice versa. And so the argument here would be, I eliminated everything that had to do with VPEG, everything. And I hear your argument being, but you didn't eliminate the remedy. And the remedy goes against VPEG. And it may be some of them go towards the management itself, making it direct. But at least some of it goes towards VPEG. So how do we balance that, where the plaintiff is the master of the complaint and removed all those claims against the corporation, don't even call them a nominal defendant, versus the types of remedies that they're looking for? So at some point, I mean, I think it used to be the case, and I learned in law school that, you know, jurisdiction is determined at the time of the filing of the complaint. And then I later learned that's not exactly true, because a district court can help the plaintiff by telling it, well, if you get rid of this, this, this, and this, and this, well, then maybe we have a diversity case that still exists. You know, the question is, how many chances do you get to do that? I think you maybe get to do it until there's an appeal that has to decide the status of the complaint. They had an original complaint, a first amended complaint, a second amended complaint, and then, after both appeals were noticed, they filed a third amended complaint. And even that complaint has five or six categories of relief directed at VPEG, and it still has derivative claims. And I do think derivative can be, you can make sense of it. It means a claim where you are basically saying the limited partnership itself was harmed. And even if you as a plaintiff feel that harm, you're only feeling it in the same way as every other limited partner. And those were the claims at the district court. But Wolfschleger says we don't necessarily have to freeze time at the time of removal. That, in fact, later changes, if they are granted leave to amend by the district court. That's the key decision. If they're granted leave to amend, you know, you can change it to a federal case, to a state case, et cetera, just by changing the complaint. So we're stuck with the complaints that we have here. But I think your argument is even so. They didn't eliminate everything. They eliminated, there's still remedies. Even if they're trying to pretend that the company's not in it, these remedies tell a different story. I think that's the argument you're making. Am I right about that? That is correct. And there are some additional attributes of it beyond the complaint, which is the fact that the district court appointed a receiver over VPEG, which has taken over control of its assets. It has sought to sell assets in order to pay its own fees. It is operating with the powers that VPEG GP, which is not even in the case because intervention was denied, is supposed to have. And, in fact, even if you ignored all the issues with the complaint and VPEG, the second reason there's no diversity jurisdiction is because VPEG GP was dropped and intervention was denied. But it's an indispensable party. And it is not diverse from the plaintiffs. And that's because it has a member out of 14 who is a Texas resident. Meanwhile, what... This is VPG? VPEG GP, which is the general partner of the limited partnership, it has 14 members. One is a Texas resident citizen. And one of the plaintiffs, I think it may be the second named plaintiff with the name Oliver, is an LLC that has a single member that's a Texas resident. Does that collapse into your first argument, though? Because isn't the argument then, well, they're indispensable because there's all these remedies that affect the general partnership. And, therefore, you've got to bring them in under the civil procedure rules. I'm trying to think if there is an aspect of VPEG GP that is completely independent of all the different remedies. I mean, I think the main problem is in the second admitted complaint, the plaintiffs want to rescind their subscription agreements. The subscription agreements are signed by VPEG GP only. Now, they're signed by a human who is acting as the manager for VPEG GP. But it's the only signatory to the subscription agreements. And we've cited a couple of cases from the Fifth Circuit and the Ninth Circuit. And many circuits have cited those cases. I don't believe this circuit has cited those cases. But the proposition is if you're going to void or rescind a contract, all contracting parties have to be before the court. Well, which complaint is the operative complaint for purposes of this appeal? My belief is that the second amended complaint, which is docket number 12, which is the live pleading when both notices of appeal were filed. And I would just correct a misstatement in the plaintiff's brief. They say the third amended complaint was filed before one of the notices of appeal of the second notice of appeal. And that's just not correct. It was filed some days later. However, I do think it's fair to say that the district court was anticipating that plaintiffs would drop their derivative claims. And so, I think when we look at the second amended complaint, we can imagine that the causes of action that say derivative are not there. But they're not the problems. It's all the relief that's being requested, which, again, with respect to the third amended complaint, only changes in one or two categories. So what do we do with the third? What should be the court's view of the third amended complaint? What relevance does it have, I guess, is the question. I kind of think, and sometimes I maybe think in two black and white terms. But I think technically there's the divestiture rule that says that after the appeal is noticed, issues pertaining to the appeal can't be monkeyed with in the district court. And so, I think it was technically not permissible to accept a third amended complaint that purported to actually drop VPEG even as a nominal party. And I just think you don't look at it. And you say that the second amended complaint shows that there's no diversity jurisdiction for either one or two reasons. If I were right in the opinion, I might say in the alternative, even if we considered the third amended complaint, we would reach the same result, just kind of as a belt and suspenders. And then I would remand for vacatur of the receivership and instructions to dismiss. And it's not a windfall for defendants. I mean, the case can be, and we would say should have been, and certainly can immediately be refiled in Missouri State Court where all the parties can be joined. I mean, it's a case where the partnership is governed by Missouri law. I mean, it's a state court case. On the necessary and indispensable party, one of the things that sort of counters your position is the fact that I know there's disagreement about this in the record, but from what I can tell, those same two managers are involved in every single part of the company. And so the argument would be, well, if they're already part of it and they make up the lion's share of what's going on with the company, they would be able to defend the interests of all the different entities here. And so I want to give you a chance to respond because that's a really pretty powerful argument going the other way. So I think certainly for the indispensability issue with respect to VPEG-GP, that is a tricky part of the equation and the Rule 19 analysis and Rule 24 for intervention, you know, it's like a law school exam to figure it out. I think there are two reasons that a district court is asked, okay, VPEG-GP wants to intervene. And the plaintiffs are saying, well, Zambur and Cosby, they can adequately represent its interests. Legally, they can't represent its interests as managers if they are being sued solely in their individual capacity. And the distinction is when one of them might sign a subscription agreement, the hat they have on is as the manager or president or whatever the title is of VPEG-GP. Once that hat's removed and then they're just in their individual capacity, they don't have, I would say, the authority to act on behalf of VPEG-GP legally. And therefore, they're not going to be able to factually do things. Like if they're ordered to return money by signing off on a wire transfer with respect to VPEG-GP, they wouldn't have individual authority. They'd have to act in their managerial capacity to do it. That's the legal reason. The factual reason is there's a potential conflict. If I'm an individual defendant, I might say, you know, I don't want this potential liability against me. Go ahead with a receiver. Get me out of this. Now, we're not in that position because VPEG-GP has been denied intervention and so the individuals don't have to worry about it. If VPEG-GP is allowed to intervene, that destroys diversity and so the conflict doesn't come up. But if this court said, well, I think there's jurisdiction, but I think VPEG-GP should be allowed to intervene, I think then you'd have to have a serious conversation with attorneys as to whether, you know, the particular individuals can be represented by the same folks who are representing the entity because there is an adversity in connection with what the plaintiffs are seeking in terms of the receivership is the best example. If the court doesn't have any further questions, I will just reserve the time I have reserved for rebuttal and go from there. Mr. Ruskoski, do I say that right? You got it perfectly. My dad and mom will be very happy. It doesn't always happen. May it please the Court, John Ruskoski, I represent the plaintiffs and appellees in this matter. From the outset and continuing today, plaintiffs have always pled direct claims relating to misrepresentations made to them and only to them as a discrete group. That's present in the initial complaint, the first amended complaint, the second amended complaint, and the third amended complaint. And as Judge Shelp found following an evidentiary hearing, these were representations, whether for negligent misrepresentation, breach of fiduciary duty, or accounting in this order. These were all direct claims citing the Robinson case. It's on page 16 of his order. I apologize. I don't have the exact site, but these are direct claims where we put in money, my clients put in money, and now the individual defendants have that. And I should explain as well, the reason VFM remains a party is VFM was the other entity that would receive money and then distribute that money to Zamber and Cosby, the individual defendants. But based on what you're saying, I think you actually have a problem. Because if they are direct claims, then we could not find, and maybe you have one, a single case where, this is different, but direct claims, we could not find a single case where receivership was ordered, not one. Your Honor, in terms of, well, I didn't look precisely at that issue. I'd be happy to look at that issue. But here, the receivership was introduced in the situation where, like anything else, whether it's a bank account, whether it's a piece of land, or in this case a fund that holds bank accounts, the receiver was put in place because the evidence that was presented at the evidentiary hearing is that money that we were being put in was then being taken by the defendant, which gives rise to the direct claim. Now, to be fair, those, we did find them with regard to complete third parties, but not interested related parties. And so I think that presents a problem for you because of the theory of direct claims. You're suing the individual shareholders, trying to pretend that you don't care about the money in VPEG. But really, you care about the money in VPEG because that's how you're going to recover. And so, in essence, I think the problem is you are converting, by the remedies sought, you are converting these into derivative claims, or you can't have the receivership. You can't have your cake and eat it too. You either get the receivership and bring direct derivative claims, or you bring direct claims and, sorry, you've got to, I mean, you've got to, whatever's left at the end of the day is what you get and no more. Well, let me address that both factually and legally. Okay. Factually, just to be clear, again, going from the conditional complaint to the Third Amendment complaint, and I'll talk in a bit why it's proper as the Third Amendment complaint. The Third Amendment complaint seeks repayment from the individual defendants. They're the only defendants that are named, therefore the only party we can get repayment from. In addition, the factual record shows they're the only ones with money. They're the ones that have now removed what we've discovered thus far, $7.7 million of those funds. So our case is about repayment of that money from the individuals that took it, that have it. And you can't have a receivership because then you're bringing the company in. I'll get back to that in one second. VPEG, for its part, and this is part of the record as well, at the time the receiver was established, had $300. $300. In other words, VPEG is not a source of repayment because the defendants had already removed that money from VPEG, which is why we're seeking direct payment from them. Now, VPEG at the time when we tried to plead a derivative claim, and Judge Shelp rejected that, and so that's now out of the case. I'll tie that back in a second. But the reason the receivership was appointed was to make sure that if any further funds came in, they were not dissipated or taken by the defendants. So that directly addresses that situation where we provided evidence of fraud, although fraud's not required to establish a receiver, but established evidence of fraud in terms of the removal of that money. At that point in time for the receiver hearing, we knew it was $2 million. By the time of the August hearings, we knew that money had grown to $7 million and things of that nature. How does this help, though? I mean, I actually, you're kind of like, I mean, you're making it worse because the fact of the matter is if you're worried about the money coming in, you're really suing VPEG, at least in part. In part, you are suing VPEG. You can't have your cake and eat it, too. You can't bring individual claims and then want relief against a non-named third party. So we're not seeking any relief against VPEG. Again, and part of this is we're suing VPEG. You were, though. You just said you were. You said that any money that comes in has to be held so that we can recover from it. So that is relief against VPEG. You added a word at the end that I did not add. Okay. We're not seeking to recover that money from VPEG. If that money comes in, it's frozen there. And certainly, at this point, we also recognize that we are one of the other limited partners. But at no time throughout this case has VPEG been a party, which is what distinguishes it from all the other cases cited. They cite Buckley. They cite various cases like that. We have never sued VPEG. The initial complaint did not even name VPEG. The later amended complaint sought to perhaps seek VPEG as a nominal defendant for some protective purposes. But the third amended complaint, after Judge Shelp ruled that the derivative claims would create diversity issues, VPEG is not a party, not a nominal defendant. It's out. I think you're highlighting the inconsistency, which is if you cannot recover any of the money that comes in, why is there a receivership at all? You're not benefiting from the receivership. Your theory has to be that at some point it's going to be transferred, right? And so I just don't understand. There's a conflict or an inconsistency there. Well, let me try and address that. I disagree for two reasons. And first of all, it's because VPEG, when you're looking at whether it's property subject of receivership, it does not need to be a party to be subject to receivership. Again, you know, I analogize this whether it's to a piece of land or a bank account. Sometimes you're seeing that in receivership actions. Sometimes you're seeing that in interpleader actions, whether it's life insurance, whether it's a painting or anything else. The receiver is sitting there to protect the assets. That does not mean that we have a right to collect those assets, but it's protected in the first place to make sure they're not dissipated. That doesn't give us a right, and we've not pled a right to recover any of those assets from VPEG. And how does that help you? That's the part I'm making. It helps us because at this stage, it's not a party because we're not seeking any relief from it. At no time have we sought relief from it. And at this point in the Third Amendment complaint... No, how does that help the plaintiffs? Like, and not in terms of strategically in the litigation, but how does keeping that money in the company, if you're not trying to recover from the company, help the plaintiffs? It helps the plaintiffs because the court determined, made factual findings which of course were reviewed for clear error. The appointment of the receiver in the first place is looked at for abusive discretion, but made factual findings for clear error. That helps us to make sure there's not further dissipation or mismanagement. And VPEG doesn't have a stake. VPEG doesn't have a say whether it wants Zambra and Cosby to run it, or whether it wants Jason Buehlinger, the receiver, to run it, or John Smith or anything else. VPEG is just an entity. It doesn't have a say or sway in that regard. So that's how it helps the plaintiffs. It's because it makes sure that if additional money comes in, that it's not dissipated. Now, if we would later make a claim against that money, we'd run into the issue perhaps that Your Honor raised. But we've not made that claim, and it's certainly not part of the Third Amendment complaint. It's there for protective purposes, because again, as the judge, Judge Shep, found, not only did he find evidence of fraud, but he believed there was criminal conduct occurring. So in those circumstances, it would be a gross misconduct of justice, and certainly, you know, violate the abusive discretion standard to determine there's some issue with the receiver being in place to protect the assets. If we make a claim later, and Judge Shep determines that that creates an issue with diversity or derivative jurisdiction, we need to face that at that time. But that's a speculative harm, and that's exactly what the case law tells us we should not be looking at, both in terms of the receivership, but also in terms of the issue relating to the indispensable party argument. We look at the case as it lies right now. And following the receiver order, in which the judge said the direct claims are properly pled, they're pled relating to a discrete injury made to my clients. Again, not made to VPEG as a whole or the other investors as a whole, but made in a September 2022 meeting in South Bend at a family meeting, and in a April 2023 meeting following that, in which both instances the misrepresentations were made and led to investments and loans that then were pocketed by the defendants. But all of this does depend, and I want to let you move on to the rest of your argument. All this depends on the availability of a receivership in a direct action, which I haven't found anything other than when you have the money deposited in a third-party bank or something. Well, and I, Judge Strauss, I have not looked specifically at that issue, and to the extent that you would like us to address, I'd ask for Lee to briefly address it, because it's certainly not been addressed by either party. We're not going to have more briefs in this case. Fair enough. With two motions to stay already that were denied, you know, I certainly recognize there's a pile of record there. But in these circumstances, that's essentially what's being protected. I mean, they say this is a fund, but at the end of the day, that's what's being protected. This is a bank account. And the bank account is no different just because it's owned by a fund. It's a legal entity, is it not? It is a legal entity. Do you have a case that would support the notion that you can seek as relief a receiver to manage the fund, the freezing of the fund's assets, and an accounting? Do you have a case that would stand for the proposition that you could seek that relief, which impacts this limited partnership, and you don't have to make the limited partnership a part? So let me break that down into parts, because I think it's two different questions. In terms of the LLC itself, Your Honor, the answer is yes. I would say in part, and I recognize all three of you were part of this panel, so you're probably familiar with the case, but the Morgan Stanley case dealt with a similar circumstance in which Morgan Stanley was seeking money from an individual, and in that instance, the receiver was appointed relating to various LLCs in which that individual had an interest. In other words, as part of the diversity analysis, one didn't need to look at what every LLC was involved because the receivership was solely in place to protect the assets from being dissipated. So if you take a look at the Morgan Stanley, I think that's certainly one case. It's a 2020 case that I believe all three of you were part of the panel of that provides that different opportunity. The second question you asked was a little bit different one, and I've got to make sure I get it right. So it's not just a question over the LLC, but a question over in terms of going forward. Again, the same principle applies. We're not seeking anything from VPEG. Didn't seek in the original complaint, not being sought in the third complaint. The repayment is sought solely from the defendants that have that money because VPEG does not, and even if it did, we understand. But you've asked in the third amended complaint, you've asked that the fund's assets be frozen and that a receiver be appointed to manage the fund. Does that not impact VPEG? It does not impact it from a diversity perspective, Your Honor, because again, the receiver is in place and now administering the business. So in other words, when we looked at that situation, we're in a situation in which upon appointment of the receiver, it was found $300 were sitting in the accounts. $300. Here we now have the receiver that's managing those accounts, but as the case law makes clear, VPEG does not have a say or sway whether it's a bank account or an entity for determining, and this is an area where I don't think we need to break new ground or new law. We're simply looking at a situation in which those bank accounts are being administered to make sure there's not further improper activity going on. So in those sorts of circumstances, we can certainly, I recognize we're not looking for additional briefing here, but from the circumstance here, no case law has been presented to you about a problem appointing a receiver over VPEG in these circumstances because the main question that's being asked in these circumstances is are we seeking relief against it? And the answer is no, we're not. Its assets are still there. They're now being administered by a receiver and VPEG, and we used a captain of a ship analogy before, but I referenced some of these other examples, whether it's a parcel of land, a bank account, that's what the receiver is administering at this point in time. Well, the other question I have is why would we look only, why would we not look only at the second amended complaint? Isn't the third amended complaint really an example of really two courts purporting to exercise jurisdiction over this case at the same time? For two reasons. It's on appeal, but the district court is still exercising jurisdiction. For two reasons, and I may get into three reasons in that regard. So the first reason is we need to look at the backdrop here. Right now we have an appeal by VFM. None of the individual defendants brought an appeal, and we have an appeal by what I call PEGP, what Mr. Gaston called VPEGGP. So none of the individual defendants are parties to the appeal. So the case proceeds against them in that regard. The second is there have been two motions to stay the case from proceeding. Both those motions have been denied. One in the district court, twice here in the appellate court. The third just goes to the question I was talking about earlier. When the receiver order was entered, it also dismissed the derivative claims. So all this talk about we're seeking rescission and things like that, those have been dismissed. Those are out of the case. And thus, and we pointed out in the record, and if you take a look, I want to make sure I'm citing to the correct page, but the district court at the August 7, 2025 hearing specifically ordered that we should amend the complaint. There was no objection by counsel. That's Mr. McCall, who's co-counsel of Mr. Gaston. Mr. McCall serves as counsel for two of the individual defendants, Zambra and Cosby. He also serves as the counsel for VFM. Mr. McCall also serves as the counsel for Visionary PEGP. So no objection by that time of counsel to the court's statement that I've removed anything that may be derivative. Therefore, you should file a new complaint. And that's at pages 44 through 46 in 54 of that August 7 transcript. And just to add even more to that, if one looks at the record, it's app 12, the district court in docket 184 denied a motion by Mr. Cosby when we filed the third amended complaint to strike it, saying, no, I not only gave them permission, I ordered them to file it, first of all, to structure the relief that they're actually seeking against the individual defendants, as well as to add new evidence of fraud that was part of it. So under those circumstances, the case needs to proceed. I mean, we've got a supervisory order in terms of receiver order, but the rest of the case proceeds. So it's proceeded to discovery. There's been hearings. There's been additional activity taking place. With no objection, and not only no objection, active involvement by Mr. McCall on behalf of the individual defendants and others. So under those circumstances, it's both the second amended complaint and the third amended complaint that provide information. Because part of the second amended complaint was, again, seeking money from the defendants. Did I answer your question? I wanted to make sure I answered your question as I went through that, Judge Shepard. You gave me an answer. Okay. I'll take that. So just turning back then to the more generic question. So in terms of the appointment of the receiver, Judge Shelp held an evidentiary hearing. He heard evidence from various individuals, including my client, including individuals who subpoenaed, relating to the dissipation of assets that was going on to the defendants and it was appropriate under those circumstances to appoint a receiver to ensure there was no further dissipation of assets. I was wondering as you were answering Judge Shepard's question, suppose the receiver falls into one of two camps. If the receiver is somebody that VPEG doesn't want, and therefore it's not in the litigation and can't argue against that particular receiver, or suppose the receiver is actually a fraudster him or herself. They appoint a receiver and then starts taking all of the money. And yes, there are monthly reports, but then the district judge is like, wow, there was, you know, $100,000 last week. Now there's $25,000. Says, okay, receiver, you're relieved of your duties, but there's still $75,000 missing. My point is, because the receivership affects VPEG, aren't they still a real party in interest? Those hypotheticals, while still a little far-fetched, show that it has an interest at least in who the receiver is who's appointed. The answer I guess respectfully I'm going to say is no. Because under any circumstance, some individual in a hypothetical sense could do what we now know the defendants did, but we also know that the receiver has not done. But again, VPEG doesn't have any say or sway under any of the case law that we've seen in terms of who's running it. It's no different than a bank account. It's no different than a piece of land. If people are fighting over a piece of land, putting it under receivership to figure out how that's going to be addressed doesn't make it a party of interest, and you don't need to consider it from a jurisdictional analysis. And certainly, we did some very far-reaching – well, certainly the comment has been made. There's been a lot of briefing at the – It's not a bank account. It's not a piece of land. It's a legal entity that can be made a party and can sue and can be sued. But is elected not to do so. And can enter into contracts. But is elected not to do so. And VPEG, if it wanted to do so, it could have sought that opportunity from the outset. In fact, Mr. McCollum, the defendants even hired a lawyer to try and press some jurisdictional arguments on behalf of VPEG, but did not push those very arguments the Court is raising here, whether that would create that sort of impairment. So having not made that – those arguments below, it would be, you know, improper to try and find at least a hypothetical that those arguments could happen here based on a remand situation or based on the actual circumstances. But, I mean, the one thing you run into is with subject matter jurisdiction. Not the receivership issue, but the subject matter jurisdiction. It's either there or it's not, and we can raise it sua sponte. Does subject matter jurisdiction be raised any time? Sua sponte. We certainly agree with that. But under these circumstances, because again, Judge Shepard, I'm going to push back, I certainly recognize it's not just a bank account, but that's in essence what it is right now. I mean, it's not running an entity. It's nothing more than the bank accounts and the assets it holds. That's essentially what VPEG is at this point in time. So when you look at the practical circumstances, and certainly we have the benefit of the record where we do have some receiver reports that show there's the ongoing monthly reporting. We have Judge Shepard, you know, using an appropriate role in supervising that. Some of this is obviously happening after the appeals are filed, so I don't want to delve too much into that. But under those circumstances, there's simply not a question of whether VPEG, VPEG certainly is not a party from which relief is being sought. And arguing it, when you look at whether it has an interest, the interest is whether it has a say or sway in whether it's run by Cosby's, Amber, the receiver, John Smith, whoever else. And under the law, it simply doesn't have that. There's not something, there's no case law out there, and again, we've researched this thoroughly from all the district court filings. They were voluminous, as well as what's gone into this court. There's simply not that impairment or interest that needs to be considered. Before I forget, I want to just pick up briefly on a question from Judge Strauss that he made to Mr. Gastone. I think, you know, Your Honor was completely right. Under these circumstances, the judge made factual findings here, that it was Zambor and Cosby were the two that were running the general partner entity. They're completely aligned under the Curry case. It's an Eighth Circuit 1999 case. I think Judge Loken, you were involved in that one, and others, where there is no spread whatsoever, and he based on the evidence, the declarations, the testimony filed, and other things, as well as the state records. I see that I'm out of time. Unless there's any further questions, I thank Your Honors for my time. Thank you. Thank you, Your Honors. Briefly hit a couple points real quick, and then maybe one or two a little more in depth. To say that BPEG only has $300, I think, I don't want that to distort the view. It may have $300 in cash, but it's a portfolio holding company where the record indicates that it's a $90 million fund. By way of example, the receiver sought to sell shares worth tens of thousands of dollars to pay its fees. It's not coming from that $300 bank account. It's coming from the sale of securities. Although there are allegations, or at least some evidence that suggests some of those companies are not really going concerned, that they just don't have much in assets. Yes, that is what the hearing in April of last year had evidence to that effect, certainly. The standard of review, use of discretion for receiver, correct, but the threshold question of jurisdiction is not an abuse of discretion standard, which the Court knows. I do think it's important to understand that BPEG is not a depository, not holding money like a custodian or Morgan Stanley Bank. Once investors put their money or their loans into it, it becomes partnership property. We cite cases in our reply brief at page 6 on that. It is a company, and I have an analogy, and I think the confusion comes because you hear private equity fund. It sounds abstract. You think it's just a set of bookkeeping entities, but imagine if 10 Coca-Cola shareholders sued Coca-Cola's officers for fraud, seeking everything listed in the Third Amendment complaint. They want a receiver over Coca-Cola. They want to remove its management. They want to freeze its assets. They want to rescind their stock purchase agreements. They want repayment of $11 million. In the Third Amendment complaint, it doesn't say it's just coming from defendants, individual defendants. It says repayment of $11 million, and then separately it asks for damages of $11 million. I think you'd say, well, yeah, the individual defendants is where you're trying to seek a damages number that equates to the number that got put into BPEG, but if you're asking for repayment, that's asking for relief from BPEG amongst all the other relief, and I'm out of time, and if the court has no questions, I'll finish. Thank you, John. Well, it's a complex case that's been thoroughly briefed. The argument's been helpful. We'll take it under advisement and do our best with it. Thank you.